```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :       CRIMINAL ACTION
                                :
           v.                   :
                                :
MATTHEW SANDERS                 :       NO. 07-362
```

MEMORANDUM AND ORDER

McLaughlin, J.                                      October 1, 2008

      The defendant is charged with robbing a K-Mart store, using and carrying a firearm during a crime of violence, and obstruction of justice. The defendant moves to dismiss the indictment because the Philadelphia police lost certain evidence and to suppress the victim's identification of the defendant as unnecessarily suggestive. The Court held an evidentiary hearing on September 8, 2008. The Court denies the motions.

I.    Findings of Fact

      Detective William Ward is employed by the Philadelphia Police Department. He is in his thirteenth year of service. He investigated a robbery at the K-Mart located in the 900 block of Orthodox Street and Castor Avenue on December 30, 2006. During his investigation, he spoke with Jack Egan, a representative of K-Mart. Egan told the detective that store videotapes may show the person who robbed the K-Mart coming into the store the night before. Egan also told the detective that there were some items

left inside the security office that did not appear to be from any of the staff. Detective Ward took these items, two soda bottles and a flimsy plastic construction hat, back to Northeast Detectives. One of the soda bottles had a yellow liquid inside with a cigarette butt in it. Egan thought the yellow liquid was urine. Detective Ward put the items in a box and secured the box. He took the box back to the detective division to resume another assignment. His intention was to get everything processed for fingerprints.

Detective Ward took the hat down to 8th & Poplar to have it fingerprinted. There were no fingerprints on it. He left the other items in the box on a filing cabinet at Northeast Detectives for an in-house person, Detective Sarah Valentino, to try to get fingerprints. When Detective Valentino came in on Monday, she tried but was not able to get any fingerprints off of the bottles. She put the bottles back on the shelf when she finished with them. Detective Ward brought the hat back and placed it in the same box with the bottles. The box was sitting on top of a long row of filing cabinets behind the officers' desks. Detective Ward intended to place them on a property receipt and submit them to evidence at City Hall.

Detective Ward got consumed with other cases and the box sat on the filing cabinet for several days. He then had two regular days off. When he returned, everything was gone from the

top of the cabinet. He had no idea where it was and still does not know. He asked several people what happened and someone suggested that the items were thrown out. The captain in the past had issued orders that he did not want items being placed on the cabinets. When the detective was off, the captain may have ordered everything taken off the top of the cabinets. Officers put things on the cabinets because they had no other place to put them. People would put typewriters up there, and other personal things.

About a week after the evidence was lost, Detective Ward received a call from a regional manager of K-Mart who gave him the name of the defendant, Matthew Sanders, as someone who worked for a security agency that provided security for the front door of K-Mart. Detective Ward received the defendant's name, date of birth, and other information from the security agency.

Egan told the detective that he thought that the suspect got himself locked in the K-Mart overnight. Egan thought that the robber had locked himself or hidden in the security room and then confronted Dorothy Brooks when she came in in the morning. The person on the videotape that Egan thought may have been the robber was walking into the front of the K-Mart with the hard hat in his hand. The soda bottles and hard hat were gone before the detective had any inclination that Sanders was the

suspect. At this time, the detective had had no experience with DNA evidence.

Detective Ward prepared a photo array to show to Ms. Brooks. When he received information from the security agency, he ran a check on the defendant. The defendant had a photo number, meaning that he had a criminal record with Philadelphia. The police have a data imager system which contains the photographs from Philadelphia arrestees as well as state wide arrestees. Detective Ward placed the defendant's photo number into the data imager system, generating every picture of the defendant in the system. Detective Ward selected the newest picture that was in the system. He then selected an option called "Similar Images." This option searches through the data base for other defendants with the characteristics and description of the defendant that is programmed into the computer. It then presents the viewer with other images that one can manually select.

Detective Ward identified the photo array of eight photos that he showed to Ms. Brooks. He selected the seven photographs to place with the defendant's photograph. He was looking for people of the same race and age group. The defendant had a mustache, so he tried to incorporate a mustache but not too much other facial hair. The defendant has somewhat of a short haircut and he tried to work that in as well. Of the photos that

he had, he used the seven that best fit the defendant's image at the time. Clicking the "Similar Photos" option gave him about one thousand photos. He went through about 100 photographs to get the seven.

On January 12, 2007, Detective Ward took the photo array to show Ms. Brooks. He told her that he wanted her to look at some photographs. He placed the array on the desk in front of her and asked her if she recognized anyone. Without hesitation, she pointed to the defendant as the man who robbed her. She said that the robber appeared a little bit older in person than he did in the photograph. The detective had her circle the picture, sign it and he had Detective Kelly sign it as a witness. The photo array was black and white and straight from the printer. Detective Ward did not conduct a lineup.

II. Analysis

The defendant has moved to dismiss the indictment because of the loss of the soda bottles and hard hat and to suppress the identification evidence of Ms. Brooks. The Court will deny both motions.

A. Motion to Dismiss Indictment

In Arizona v. Youngblood, 488 U.S. 51, 57 (1988), the Supreme Court held that bad faith by the government must be shown

5

for a defendant to prevail on a claimed Due Process Clause violation for the "failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." See also United States v. Deaner, 1 F.3d 192, 200 (3d Cir. 1993).

There was no bad faith here. Detective Ward put the evidence on top of a filing cabinet and the evidence was removed while he was away from work. At the time the evidence was lost, the Detective did not know that the defendant was a suspect. Nor did he consciously consider the fact that DNA evidence may have been able to be obtained from the evidence. Although putting evidence on top of a filing cabinet may have been negligent, the Court cannot say that it was done in bad faith.

B.  Motion to Suppress Identification

The standard for admitting evidence of both in-court and out-of-court identifications is "that of fairness as required by the Due Process Clause of the Fourteenth Amendment." Manson v. Brathwaite, 432 U.S. 98, 113 (1977). The defendant bears the burden of proof in challenging the admissibility of identification testimony. United States v. Wade, 388 U.S. 218, 241 (1967).

The inquiry into whether an identification procedure violates a defendant's due process right is two-pronged. In United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006), the United States Court of Appeals for Third Circuit explained that an identification procedure violates due process only if it is both "(1) unnecessarily suggestive and (2) creates a substantial risk of misidentification." See also United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995). Thus, showing a witness a photo array may violate due process "when police attempt to emphasize the photograph of a given suspect, or when circumstances surrounding the array unduly suggest who[m] an identifying witness should select." United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003), citing Simmons v. United States, 390 U.S. 377, 378 (1968). In weighing the suggestiveness of a photo array, a court looks at the totality of the circumstances. Neil v. Biggers, 409 U.S. 188, 199 (1972).

The identification procedure used in this case was not unnecessarily suggestive. The Court has reviewed the original photo array. Seven of the eight men in the photo array appear to be very close in age, skin color, hair style, and facial hair. Their facial features are also similar. One, the person in the bottom row on the left, does appear to be somewhat younger than the defendant and has corn rows in his hair. Under the totality of the circumstances, however, the photo array was not

7

suggestive. Similar facial shapes, eye shapes, foreheads, brow lines, noses, and hair patterns.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| MATTHEW SANDERS | : | NO. 07-362 |

ORDER

AND NOW, this 1st day of October, 2008, upon consideration of defendant's Motion to Dismiss Indictment due to Spoilation of Evidence (Docket No. 46), Motion to Suppress Identification Evidence (Docket No. 47), and the government's objections thereto, and after a hearing held on September 8, 2008, IT IS HEREBY ORDERED that said motions are DENIED for the reasons stated in a memorandum of today's date.

BY THE COURT:

_/s/ Mary A. McLaughlin_
MARY A. McLAUGHLIN, J.